[Nos. 33985–1–I; 34019–1–I.    Division One.    May 20, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. NALEN PIERRE WILLIAMS, *Appellant.*

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES NATHANIEL WILLIAMS III, *Appellant.*

ii

# ERRATA

114 Wn. App. at 245, line 15. The name "Turkwila's" should be "Tukwila's."

114 Wn. App. at 644, line 16. The word "Unifrom" should be "Uniform."

111 Wn. App. at 636, line 5 and thereafter. The name "Schultz" should be "Schulz."

104 Wn. App. at 906, line 3. The name "Environmental Protection Act" should be "Environmental Policy Act of 1971."

81 Wn. App. at 738-44, running head at top of page. The P.2d cite should be 916 P.2d 445.

78 Wn. App. at 162, lines 1 and 2 of case caption. The words "DEPARTMENT OF LABOR AND" should be deleted.

77 Wn. App at 596, line 1, and at 596-602, running head at top of page. The year should be 1995.

73 Wn. App. at 521, line 13. The name "*anderson*" should be "*Anderson.*"

73 Wn. App. at 851, line 24. The following words are inserted after the phrase "only after the crime": "is complete cannot be liable as an accomplice for the associate's."

Headnotes, indexes, tables, and other editorial matter prepared by LEXIS Publishing™, Copyright © 2004 by
Matthew Bender & Company, Inc., one of the LEXIS Publishing™ companies.
All rights reserved.
LEXIS, NEXIS, *Shepard's* and Martindale-Hubble are registered trademarks, LEXIS Publishing and MICHIE are trademarks, and lexis.com is a service mark of Reed Elsevier Properties, Inc., used under license. Matthew Bender is a registered trademark of Matthew Bender Properties Inc.
Printed and bound by Matthew Bender & Company, Inc., 2004.

*Neal J. Philip and Ende, Subin & Philip; Peter Connick*; and *David L. Donnan of Washington Appellate Project*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Kristin V. Richardson, Deputy*, for respondent.

ELLINGTON, J. — Charles and Nalen Williams appeal their convictions for felony murder, arguing that they were entitled to separate trials and to a "no duty to retreat" jury instruction. Finding that the trial court erred by failing to instruct the jury on the duty to retreat, we reverse and remand for a new trial.

On October 14, 1990, Joseph Wade suffered a fatal head injury. In February of 1993, June Kessler called the police and implicated Charles and Nalen Williams in Wade's death. Kessler is the mother of Nalen's child.

Charles and Nalen waived their rights and gave signed statements. Each brother claimed self-defense but implicated the other brother as the one who struck the fatal blow. The State charged each brother with felony murder predicated on second degree assault.

Charles and Nalen moved for severance, arguing that their defenses were mutually antagonistic and that their statements could not be redacted without prejudice. The

court denied this motion and redacted each statement, removing any references to the nondeclaring codefendant. After Charles and Nalen testified, their complete statements were admitted into evidence.

Charles testified that Wade knocked at the door of Charles' residence on October 14, 1990. Wade appeared intoxicated and asked to speak with a "Herbert Hamon." Charles told Wade that no such person resided at that address and Wade departed. Charles then became concerned that Wade may have been looking for a drug dealer for whom Charles worked. Charles ran out into the street and asked Wade if he wanted to buy some drugs.

According to Charles, Wade threatened him with a knife for no apparent reason. Charles backed up and grabbed a shovel out of a nearby pickup truck. Charles advanced on and backed away from Wade during their confrontation. Charles' brother, Nalen, arrived at the scene and grabbed the shovel from Charles. Charles went back to the truck and grabbed a pitchfork. When Charles returned, Nalen and Wade were "going back and forth, like facing off each other." Charles repeatedly hit Wade's hands in an attempt to disarm him. According to Charles, Nalen hit Wade in the back of the head with the shovel. Nalen's testimony was similar, but Nalen claimed Charles delivered the fatal blow.

Diana Horn lived on the street where the altercation occurred. Upon hearing someone yell, "I'm going to kick your ass," Horn looked out her window and saw Charles running down the street with a car slowly following him. Charles grabbed a shovel from a truck and disappeared around a corner. Horn did not see Wade. She then heard someone yell, "Well, what, are you going to cut me now? Are you going to cut me?" Horn saw Charles return to the truck and pick up the pitchfork before running back around the corner. She then saw Charles and Nalen fleeing the scene.

R.S. viewed the altercation from a house window. She saw the men running down the street. Wade was "back-

pedaling," trying to stay away from Charles and Nalen as they circled him and tried to hit him with the pitchfork and shovel. R.S. testified that when Wade put his hands up, Charles and Nalen had stopped advancing on him. Wade then lunged at the brothers, apparently armed with "a knife or something." Charles and Nalen responded by striking at Wade and apparently knocked the instrument out of his hands. The brothers then started swinging the pitchfork and the shovel like baseball bats. Charles swung the pitchfork at Wade while Nalen was circling Wade. Wade collapsed to the ground.

Wade was killed by a blow to the head. He also sustained injuries consistent with a broadside blow from the pitchfork, as well as injuries to his hands which could have been incurred either offensively or defensively. His blood alcohol level was 0.25. A combat style knife was found some distance from his body.

## SELF DEFENSE INSTRUCTION

At trial, both Charles and Nalen argued self-defense. The jury was instructed that self-defense justifies a homicide when the force used "is not more than necessary." Force was defined as necessary where "no reasonably effective alternative to the use of force appeared to exist and that the amount of force was reasonable to effect the lawful purpose intended, under circumstances as they reasonably appeared to the actor at the time." Both defendants requested a "no duty to retreat" self-defense instruction.[1] Relying on *State v. Thompson*, 47 Wn. App. 1, 5–6, 733 P.2d 584, *review denied*, 108 Wn.2d 1014 (1987), the court ruled that the instruction would be superfluous because "both defendants at various points in their testimony said they were retreating."

---

[1] WPIC 16.08 reads as follows:

It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat.

■■ A defendant is entitled to a no duty to retreat instruction when evidence supports a finding that the defendant was assaulted in a place where the defendant was lawfully entitled to remain. *State v. Allery*, 101 Wn.2d 591, 598, 682 P.2d 312 (1984). This court has held that such an instruction need not be submitted if the defendant was actively retreating at the time of the fatal act. In *Thompson*, the defendant and the victim had exchanged words outside a tavern. The defendant testified he was backing away from the victim toward his car when the victim advanced upon him and the defendant drew and fired his handgun. On appeal from his conviction for manslaughter, the court held that since Thompson's theory was that he was indeed retreating, the instruction would have been superfluous. *Thompson*, 47 Wn. App. at 5–6.

Here, each brother testified to "backing up" at various times,[2] which was construed by the trial court as retreat. However, unlike *Thompson*, here the defendants continued the altercation. The movements described by Charles and

---

[2]Representative testimony was as follows:

| | |
|---|---|
| Charles' Counsel: | What happened next after he pulled the knife and you raised your hands? |
| Charles: | [Wade] starting walking towards me. And he wasn't saying nothing. You know, I was like this, I was like hold up. You know. |
| Charles' Counsel: | What else was he doing with the knife? |
| Charles: | He was just holding it out, walking at me. |
| Charles' Counsel: | And you were backing up? |
| Charles: | Yes, I was. |

. . . .

| | |
|---|---|
| Charles' Counsel: | And what was happening while you were moving to other side of the street? |
| Charles: | Nalen and the man was [sic] going back and forth at each other. And then they had got right over in this area, right here. And the guy was like standing with the knife, and Nalen, you know, they were talking back and forth, whatever. I was standing in the street, right about here with the pitchfork. |
| Charles' Counsel: | What were you doing? |
| Charles: | I was just standing there. I was watching. |

Nalen were more akin to those involved in the "ebb and flow" and "circling" of a street fight than those of a full-fledged retreat which would render the instruction superfluous. The defense theory for both defendants was self-defense, not retreat. The witness R.S. did not describe retreat. The State argued that the brothers were not retreating, but were attacking a defenseless victim.[3]

From the record, it appears that both defendants could have safely fled, given Wade's intoxication. In some states, retreat would be required in preference to deadly force. However, in the majority of states, the law imposes no duty to retreat on one who acts in self-defense and who was not the original aggressor. *See* W. LaFave & A. Scott, Jr., Criminal Law § 5.7(f), at 460–61 (2d ed. 1986). In Washington, one who is assaulted in a place he has a right to be has no duty to retreat. *Allery*, 101 Wn.2d at 598. Flight, however reasonable an alternative to violence, is

---

Similarly:

| Nalen's Counsel: | What was happening then with you and this man until your brother returned? |
|---|---|
| Nalen: | Well, at the time when I backed into the street, the man followed after me. He was lunging at me all while I was backing back. So, since I was scared, I tried to slow him down. I hit him in his arm and I hit him in his leg. |
| Nalen's Counsel: | Did he slow down? |
| Nalen: | No. He still kept coming. It was like he didn't even feel it. He was drunk. He was pretty drunk. |
| Nalen's Counsel: | And then what happened? |
| Nalen: | Then my brother came back and hit him in the side, and that alerted the man that my brother was behind him. So, I went for his hands. I was trying to get the knife out of his hand. |
| Nalen's Counsel: | What happened then? |
| Nalen: | Then, as I hit him in the hands, he turned towards me and lunged again; and that's when my brother hit him in the back of the head with the rake. |

[3]For example, in closing argument prosecutor stated:

Joseph Wade lost [the knife] when it counted, when it was two against one, when they knocked it out of his hands, and when they started to circle, circle, circle, and he died.

not required. While the wisdom of such a policy may be open to debate, the policy is one of long standing and reflects the notion that one lawfully where he is entitled to be should not be made to yield and flee by a show of unlawful force against him. LaFave, *supra*, at 460.

In the absence of the "no duty to retreat" instruction, a reasonable juror could have believed Charles, or Nalen, or both, but could have erroneously concluded that the brothers used more force than was necessary because they did not use the obvious and reasonably effective alternative of retreat. Thus we clarify the rule, and hold that where a jury may conclude that flight is a reasonably effective alternative to the use of force in self-defense, the no duty to retreat instruction should be given. The trial court thus erred in refusing to submit a no duty to retreat instruction.

Such an error can be considered harmless if the court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result despite the error. *State v. Aumick*, 126 Wn.2d 422, 430–31, 894 P.2d 1325 (1995). An instructional error is harmless if it is trivial, formal or merely academic and in no way affected the outcome of the case. *State v. McCullum*, 98 Wn.2d 484, 497, 656 P.2d 1064 (1983). However, as we have discussed, a reasonable juror may well have concluded on this record that the failure of the defendants to retreat constituted an excessive use of force. Thus, failure to instruct the jury that Charles and Nalen had no duty to retreat was not harmless. We must therefore reverse both convictions.

We anticipate that certain other issues will again arise on retrial; we briefly address those issues here. Because the remainder of this opinion has no precedential value, it will not be published, but will be filed for the public record pursuant to RCW 2.06.040.

WEBSTER and BECKER, JJ., concur.