FILED
COURT OF APPEALS
DIVISION II

2014 AUG 26 AM 11: 37

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44135-7-II |
| Respondent, | |
| v. | |
| CRYSTAL ANNMARIE LUTTRELL, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — Crystal Luttrell appeals her second degree assault with a deadly weapon conviction.[1] Luttrell argues that (1) the trial court gave erroneous self-defense jury instructions, (2) the trial court abused its discretion when it failed to conduct a hearing to determine juror unfitness, (3) the trial court abused its discretion when it admitted improper opinion evidence, (4) the prosecutor committed cumulative prejudicial misconduct, and (5) her counsel was ineffective.

We hold that (1) the trial court's self-defense jury instructions were proper and the legal standard was manifestly apparent to the average juror, (2) the trial court did not abuse its discretion by declining to question a juror, (3) Luttrell failed to preserve the alleged improper opinion error for review, (4) there was no cumulative error and Luttrell was not prejudiced by

---

[1] RCW 9A.36.021(1)(c); RCW 9.94A.825.

any possible misconduct by the prosecutor, and (5) Luttrell fails to demonstrate ineffective assistance of counsel. Accordingly, we affirm her conviction.

## FACTS

### I. BACKGROUND

In November 2011, Summer Baldwin was at the Royal Room, a bar located in Longview, Washington. There, she encountered Luttrell, with whom she had previously worked at a strip club. Luttrell was accompanied by at least two other women, Laricia Shepard and Luttrell's sister-in-law. Baldwin and Luttrell were not strangers—one month earlier, the strip club had fired Baldwin after she allegedly assaulted Luttrell and another dancer.

After a verbal confrontation with Shepard[2] on the Royal Room's dance floor, Baldwin retreated outside. The verbal confrontation between Baldwin and Shepard continued outside, Luttrell stepped in, and at some point another bar patron alerted the bouncer, Brock Mudge, to the fight. Mudge, an experienced bouncer accustomed to observing the patrons, had broken up many altercations at the bar. Mudge observed Luttrell and Baldwin "face-to-face" yelling at each other, then Baldwin shoving Luttrell, and Luttrell striking Baldwin in the face twice with a partially full beer bottle, which broke and cut Baldwin's face. Report of Proceedings (RP) (Aug. 20, 2012) at 69. Mudge pulled Baldwin away and Luttrell left before police arrived.

Longview Police Officer Michael Maini, the responding officer, took statements from Mudge and Baldwin. Subsequently, Detective Ralph Webb, the assigned investigator, located Luttrell, who agreed to speak with him.

---

[2] Luttrell was not involved in this confrontation on the dance floor; she was elsewhere in the bar.

No. 44135-7-II

## II. PROCEDURE AND TRIAL

The State charged Luttrell with second degree assault with a deadly weapon (RCW 9A.36.021(1)(c); RCW 9.94A.825) and third degree assault with criminal negligence (RCW 9A.36.031(1)(d), (f)).

The trial court granted Luttrell's motion in limine to prohibit witnesses from referring to Baldwin as "the victim." Clerk's Papers (CP) at 31. But during testimony, the prosecutor and the State's witnesses referred to Baldwin as "the victim" three times without objection.[3] On the second day of trial and after the fourth time the State referred to Baldwin as "the victim," Luttrell objected, referencing her motion in limine. The trial court simply "agreed" with Luttrell without admonishing the jury to disregard the term. Neither the prosecutor nor the State's witnesses used the term again when referring to Baldwin.

Immediately after voir dire, the trial court notified the parties that a juror had overheard Luttrell asking another person, "[W]hy did they bring up the issue about strippers[?]" in the halls outside the courtroom. RP (Aug. 20, 2012) at 8. The trial court noted that it did not seem like the information would "create any issue" and admonished Luttrell. RP (Aug. 20, 2012) at 8. In its concluding instructions, the trial court instructed the jury that it could only consider evidence presented during testimony and during the trial. The court declined to conduct a hearing to question the juror because it was concerned with drawing more attention to the issue and worsening any potential problem.

---

[3] The prosecutor referred to Baldwin as "the victim" once when posing a question to Officer Maini and then referred to "victims" generally in a second question posed to Officer Maini later in the direct. Detective Webb referred to Baldwin as "the victim" twice before Luttrell objected to the use of the label.

3

During its case-in-chief, the State offered the testimony of four witnesses, including Mudge and Detective Webb. Mudge testified that Luttrell hit Baldwin twice with the bottle and that the bottle broke the second time. Mudge also testified that after the assault, Baldwin was not responding to anything correctly, seemed dizzy, was swaying, and was not able to say a complete sentence without stopping. Luttrell did not object to the above testimony, and during cross-examination she raised the possibility that intoxication could have caused Baldwin to appear dizzy and sway. During redirect examination, Mudge testified that he had seen people drunk and had seen people "punch drunk" from being struck. RP (Aug. 20, 2012) at 82. Luttrell objected to the foundation for these statements, but the trial court admitted Mudge's testimony "[b]ased on [his] training and experience." RP (Aug. 20, 2012) at 83.

Detective Webb testified that three days after the assault, Baldwin had bruising and swelling on the right side of her face and appeared to be in pain. In contrast, Detective Webb saw no apparent injuries or defensive wounds on Luttrell that day, despite Luttrell's claim that Baldwin had attacked her. Luttrell did not object to this testimony.

Luttrell testified in her own defense, recounting her version of November 6 and the prior fight with Baldwin at the strip club. The State cross-examined Luttrell about inconsistencies between her testimony and Mudge's testimony. The court sustained objections to the following questions:

```
Q       You heard the testimony of Mr. Mudge yesterday; did you not?
A       I heard it.
Q       And he described a situation incredibly different than what you just
        described. [Objection]
. . . .
Q       Mr. Mudge described in Exhibit 6 that you were positioned on the outside
        of Ms. Baldwin; correct?
A       I wasn't.
Q       You weren't. But Mr. Mudge did say that; didn't he?
```

4

No. 44135-7-II

[Objection]

RP (Aug. 21, 2012) at 141-42. The court sustained several other objections during the State's cross-examination.

During closing argument, the trial court sustained Luttrell's objections to some of the prosecutor's comments and statements. Luttrell objected to the State's comment, "So she's now moved from a swinging, punching motion to a stabbing motion." RP (Aug. 21, 2012) at 159. The court implicitly sustained the objection and admonished the jury to "recall what the facts are." RP (Aug. 21, 2012) at 159. Luttrell also objected to part of the State's self-defense legal argument, which the court sustained and then admonished the jury to disregard the argument.

Both the State and Luttrell proposed jury instructions, including self-defense instructions. The court gave the following general self-defense instruction, jury instruction 17, based on 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 17.02, at 253 (3d ed. 2008) (WPIC):

> The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of the incident.

CP at 53. In addition to jury instruction 17, the trial court also gave jury instruction 20, stating,

> It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat.

CP at 56. The court also gave jury instruction 18 on necessary force. Neither party objected to any of the self-defense instructions.

The jury convicted Luttrell as charged and she now appeals the conviction.

5

ANALYSIS

## I. JURY INSTRUCTIONS

Luttrell argues that the trial court failed to properly instruct the jury on the law of self-defense when it omitted the phrase "and prior to" from the fourth paragraph of WPIC 17.02 because the correct legal standard was not "'manifestly apparent'" to the average juror. Br. of Appellant at 11 (quoting *State v. McCreven*, 170 Wn. App. 444, 462, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013)). We disagree.

### A. STANDARD OF REVIEW AND RULES OF LAW

We review a jury instruction challenge de novo and evaluate the jury instruction "in the context of the instructions as a whole." *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289, *cert. denied*, 510 U.S. 944 (1993). Jury instructions are sufficient when they allow the parties to argue their theories of the case, they are not misleading, and they properly inform the jury of the applicable law when read as a whole. *McCreven*, 170 Wn. App. at 462. Jury instructions on self-defense must do more than adequately convey the law; they must make the "'relevant legal standard manifestly apparent'" to the average juror. *McCreven*, 170 Wn. App. at 462 (quoting *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996), *abrogated on other grounds by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756 (2009)). A jury instruction that misstates the law on self-defense is an error of constitutional magnitude that an appellant can raise for the first time on appeal. RAP 2.5(a)(3); *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

### B. ANALYSIS

Luttrell cites to *McCreven* to support her assertion that the trial court's self-defense instruction did not make the legal standard "'manifestly apparent'" to the jury. Br. of Appellant at 10 (quoting *McCreven*, 170 Wn. App. at 462). But *McCreven* is distinguishable. In

No. 44135-7-II

*McCreven*, we held that self-defense jury instructions that heightened the level of injury feared by the defendant from "injury" to "great personal injury" and lowered the State's burden to disprove the defense misstated the legal standard of self-defense. 170 Wn. App. at 461, 466-67.

Here, unlike *McCreven*, the trial court did not increase the level of fear of injury Luttrell must have had to invoke self-defense or otherwise misstate the law of self-defense, and did not lower the burden of proof on the State. Instead the general self-defense instruction here eliminated the optional phrase "and prior to" in the last sentence of the pattern instruction's fourth paragraph: "The person [using] [or] [offering to use] the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of [and prior to] the incident." WPIC 17.02. The failure to include this language did not prohibit or deter the jury from considering the prior assault in determining whether Luttrell was acting in self-defense. While it omitted "and prior to" from the pattern instruction, the trial court explicitly instructed the jury that it was to consider "*all* of the facts and circumstances known to the person at the time of the incident." CP at 53 (emphasis added). In addition, this instruction still required the State to disprove self-defense beyond a reasonable doubt.

When read as a whole, the trial court's jury instruction correctly stated the law, did not restrict Luttrell's ability to argue her theory of the case, and made it "manifestly apparent" that the jury could consider the prior assault in their deliberations. We presume that juries follow all the instructions given unless there is affirmative evidence that a jury disregarded a trial court's instructions. *State v. Brunson*, 128 Wn.2d 98, 109-10, 905 P.2d 346 (1995) (citing *State v. Lord*, 117 Wn.2d 829, 861, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992)). There is no

7

affirmative evidence that the jury disregarded the court's instructions. Accordingly, we hold that the trial court's instructions on self-defense were a proper statement of the law and that the legal standard of self-defense was manifestly apparent to the jury.

## II. JUROR FITNESS

Next, Luttrell argues that the trial court denied her due process when it failed to conduct a hearing after a juror notified the court that she heard information about Luttrell outside of the courtroom. Specifically, she argues that the trial court (1) should have conducted a hearing to determine whether the juror was fit to serve and (2) should have questioned the juror to determine whether the information she heard outside the courtroom would influence her decision. We conclude that the trial court did not abuse its discretion when it retained the juror without questioning her.

### A. STANDARD OF REVIEW AND RULES OF LAW

We review a trial court's decision to hold a hearing or excuse a juror for abuse of discretion. *State v. Jorden*, 103 Wn. App. 221, 226, 11 P.3d 866 (2000), *review denied*, 143 Wn.2d 1015 (2001). We will not impose a mandatory format for establishing such a record and we defer to the trial court's discretion to hear and resolve the issue in a way that avoids tainting the juror and creating prejudice against either party. *Jorden*, 103 Wn. App. at 229.

It is the duty of the trial court to dismiss any juror who, in the court's opinion, is unfit as a juror as a result of bias, prejudice, indifference, inattention, or any physical or mental defect that would interfere with "proper and efficient jury service." RCW 2.36.110. RCW 2.36.110 and CrR 6.5 place a continuing obligation on the trial court to excuse any juror who is unfit and unable to perform the duties of a juror. *Jorden*, 103 Wn. App. at 227. But neither RCW 2.36.110 nor CrR 6.5 requires the trial court to conduct a hearing. *See* CrR 6.5; *Jorden*, 103 Wn.

8

App. at 227. A trial court does not abuse its discretion by retaining a juror when the court's reasoning is grounded on a tenable basis and there is no evidence in the record of juror misconduct. *State v. Morfin*, 171 Wn. App. 1, 12, 287 P.3d 600 (2012), *review denied*, 176 Wn.2d 1025 (2013).

B. ANALYSIS

Luttrell relies on *State v. Elmore*, 155 Wn.2d 758, 123 P.3d 72 (2005), to support her contention that the trial court should have conducted a hearing. *Elmore* requires that when faced with questions of juror fitness, the trial court must (1) try to resolve any issue by reinstructing the jury; and if reinstruction is not effective, (2) conduct a "limited" inquiry that is narrowly focused on "the conduct of the jurors and the *process* of deliberations." 155 Wn.2d at 774. But the *Elmore* rule applies when the trial court is *dismissing* a juror. 155 Wn.2d at 767. Here, the juror was *retained* without anybody questioning her.

Instead, we turn to *Morfin* from Division Three of this court, which dealt with the trial court *retaining* a juror after a complaint that the juror refused to deliberate. The trial court determined that the juror was still fit to serve and declined to interview the juror. *Morfin*, 171 Wn. App. at 12. Division Three refused to impose a duty to conduct a hearing or interview of a juror when a trial court retains a juror and limited the second prong of *Elmore* to those cases which involve dismissal of a juror. *Morfin*, 171 Wn. App. at 11-12. Division Three held that the trial court did not abuse its discretion when it retained the juror, that it grounded its reasoning on a tenable basis, that it had instructed the jury on its duty to deliberate, and that there was no evidence in the record that the juror was unfit to continue serving on the jury. *Morfin*, 171 Wn. App. at 12.

Here, the trial court determined that the juror's exposure to the "issue about strippers" did not make that juror unfit to serve. RP (Aug. 20, 2012) at 8. There was no extensive questioning or investigation on the record. In its concluding instructions, the trial court instructed the jury that

> [i]t is your duty to decide the facts in the case based upon the evidence presented to you during this trial. . . .
>
> . . . .
>
> The evidence that you are to consider during your deliberations consists of the testimony that you have heard from the witnesses, stipulations and the exhibits that I have admitted during the trial. If evidence was not admitted or stricken from the record, then you are not to consider it in reaching your verdict.

CP at 34. There was no evidence in the trial record that the juror engaged in misconduct or was unfit to serve because of bias.

Because this issue does not involve juror dismissal, the trial court was not required to conduct an extensive investigation into the juror's fitness to serve. There is no evidence that the trial court's admonishments and instructions failed to remedy any potential issue—thus, a hearing was not required. Accordingly, we hold that the trial court did not abuse its discretion when it declined to hold a hearing to investigate the juror's fitness to serve on the jury.

Next, Luttrell argues that case law requires the trial court to question the juror to determine whether the extrinsic information about "strippers" influenced their verdict. We conclude that the information about strippers that the juror overheard was not extrinsic information because witnesses testified at trial that both Luttrell and Baldwin worked at a strip club and, therefore, the trial court did not abuse its discretion when it declined to question the juror in these circumstances.

Extrinsic evidence is defined as information that is outside all the evidence admitted at trial, either orally or by document. *Richards v. Overlake Hosp. Med. Ctr.*, 59 Wn. App. 266,

10

270, 796 P.2d 737 (1990), *review denied*, 116 Wn.2d 1014 (1991). There is no presumption of prejudice when extrinsic evidence is factually developed at trial. *United States v. Hall*, 85 F.3d 367, 371 (8th Cir. 1996) (citing *United States v. Cheyenne*, 855 F.2d 566, 568 (8th Cir. 1988)).

In asserting self-defense, Luttrell disclosed the "issue about strippers" during trial because the prior assault occurred at the strip club which employed both Luttrell and Baldwin as exotic dancers. The parties extensively developed the "issue about strippers" at trial; therefore, it was not extrinsic evidence and this eliminates any presumption of prejudice the evidence may have had.

Because the "issue about strippers" was not extrinsic evidence and because the trial court properly acted to avoid any potential prejudice any questioning might cause, we hold that the trial court did not abuse its discretion when it retained the juror without questioning.

### III. OPINION TESTIMONY AND USE OF THE TERM "VICTIM"

Luttrell argues (1) that Mudge provided improper expert opinion testimony about the source of Baldwin's dizziness and stumbling; (2) that by his descriptions of their injuries, Detective Webb provided improper opinion testimony about which of the women were attacked; and (3) that the State's witnesses commented on Luttrell's guilt by referring to Baldwin as "the victim." We conclude that Mudge's testimony was proper lay opinion testimony. We further conclude that Webb's testimony did not result in manifest constitutional error, and having failed to object, Luttrell cannot obtain review of Webb's testimony for the first time on appeal. Finally, while the references to Baldwin as "the victim" violated the trial court's order, Luttrell cannot show that the term's use materially affected the trial's outcome here. We reject Luttrell's claims as to improper testimony.

A. STANDARD OF REVIEW AND RULES OF LAW

"The trial court has wide discretion to determine the admissibility of evidence, and the trial court's decision whether to admit or exclude evidence will not be reversed on appeal unless the appellant can establish that the trial court abused its discretion." *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001). Furthermore, we generally do not consider issues for the first time on appeal unless the alleged error is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). Not all constitutional errors are reviewable under RAP 2.5(a)(3), only those that are manifest constitutional errors. *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). "Manifest" requires that the defendant show actual prejudice. *Kirkman*, 159 Wn.2d at 935; *McFarland*, 127 Wn.2d at 333. To determine whether an error is manifest, we preview the merits of the claimed error to determine whether the argument will succeed. *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001).

No witness may testify, directly or indirectly, to the guilt of the defendant. *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). Testimony that does not directly comment on the defendant's guilt or veracity, helps the jury, and is based on inferences from the evidence is not improper opinion testimony. *State v. Johnson*, 152 Wn. App. 924, 930-31, 219 P.3d 958 (2009).

Impermissible opinion testimony regarding the defendant's guilt may be reversible error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury. *Kirkman*, 159 Wn.2d at 927. But a lay witness may testify to opinions or inferences that are based upon rational perceptions, that help the jury understand the witness's testimony, and that are not based upon scientific or specialized knowledge. ER 701. To determine whether lay opinion testimony is permissible, we consider

12

the circumstances of the case and "'(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" *Demery*, 144 Wn.2d at 759 (internal quotation marks omitted) (quoting *City of Seattle v. Heatley,* 70 Wn. App. 573, 579, 854 P.2d 658 (1993), *review denied,* 123 Wn.2d 1011 (1994)).

## B. MUDGE'S TESTIMONY

Luttrell first argues that Mudge's testimony about Baldwin's dizziness was improper expert opinion that violated Luttrell's right to trial by a jury and her due process right to a fair trial. We conclude that Mudge's testimony was permissible lay opinion testimony and that the trial court did not abuse its discretion by admitting Mudge's testimony.

Mudge testified that after another bar patron alerted him to the confrontation outside between Luttrell and Baldwin, he saw Luttrell and Baldwin "face-to-face" arguing. RP (Aug. 20, 2012) at 69. He testified that he saw Baldwin push Luttrell and saw Luttrell hit Baldwin with the almost-full beer bottle. Mudge attempted to separate the women, and Luttrell hit Baldwin a second time, breaking the bottle. After Baldwin was hit with the bottle, Mudge described Baldwin as "shaky" and "dizzy" and although she never appeared to lose consciousness, she seemed "affected by the head." RP (Aug. 20, 2012) at 72. Baldwin was swaying, had a hard time completing sentences, and appeared to be in shock. On cross-examination, Luttrell asked Mudge if alcohol consumption could cause a person to sway and appear dizzy, and Mudge responded that it could. But on redirect examination, Mudge testified that he was well accustomed to seeing people drunk and seeing people physically struck, and understood the difference. Mudge's training and experience as a bouncer led him to believe that Baldwin was "punch drunk." RP (Aug. 20, 2012) at 82.

13

Lay witnesses may testify to opinions or inferences that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of rule 702." ER 701. For example, a lay witness may draw on his or her own observations to express an opinion on another person's intoxication. *Heatley*, 70 Wn. App. at 580. A lay witness may also draw on his practical experience or familiarity with a particular subject. *See State v. Ortiz*, 119 Wn.2d 294, 308-09, 831 P.2d 1060 (1992) (tracker's lay opinion testimony permissible based on training and experience as a tracker); *State v. Hernandez*, 85 Wn. App. 672, 676, 935 P.2d 623 (1997) (lay opinion admissible as circumstantial evidence of identity of a drug).

Applying the *Demery* factors here shows that Mudge's statements were exactly the sort of lay opinion testimony that ER 701 is intended to allow. First, Mudge was a lay witness. Second, while he drew on his practical experience as a bouncer, he personally saw Baldwin immediately after she was struck with the bottle, and derived his opinion that Baldwin was "punch drunk" from these personal observations. RP (Aug. 20, 2012) at 82. Third, Luttrell was charged with second and third degree assault, and Mudge provided an eye-witness account of the fight, testifying that he saw Luttrell strike Baldwin with the beer bottle and that Baldwin was affected after being hit. Fourth, Luttrell argued that she had struck Baldwin in self-defense, and Mudge's testimony helped the jury to determine whether Luttrell used reasonable force against Baldwin. Finally, the other evidence before the jury—the remainder of Mudge's testimony, the testimonies of Detective Webb, Officer Maini, and Baldwin, and the photographs of Baldwin after the attack—gave the jury ample basis to independently assess Mudge's opinion and reach its own conclusions as to Luttrell's guilt. It is also significant that the defense attorney, by

14

raising the possibility that Baldwin may have been intoxicated, opened the door to Mudge's redirect testimony of other reasons that Baldwin might have been dizzy and swaying.

Ultimately, while Mudge's opinion that being struck by the beer bottle caused Baldwin's dizziness supports a guilty finding, Mudge's testimony did not impinge on the province of the jury and was not improper. Mudge never made an explicit or near-explicit comment on Luttrell's guilt or whether he believed Baldwin. Luttrell cannot show that the trial court abused its discretion by admitting Mudge's testimony, and we reject her claim.

### C. DETECTIVE WEBB'S TESTIMONY

Luttrell argues that Detective Webb gave improper opinion testimony in violation of her right to a trial by jury and to a fair trial when he testified that Baldwin appeared to have injuries while Luttrell did not. We conclude that Detective Webb's testimony was not improper opinion testimony and that Luttrell cannot show manifest constitutional error to merit review.

Opinion testimony by a law enforcement officer may be especially prejudicial because the officer's testimony carries a "special aura of reliability," *Kirkman*, 159 Wn.2d at 928, but it is not improper when a law enforcement officer testifies to protocol used during an investigation. *Kirkman*, 159 Wn.2d at 930-31. In *Kirkman*, our Supreme Court held that a detective's testimony as to the interview protocol he employed, and how he used the interview protocol, was not improper opinion testimony. 159 Wn.2d at 931. Such testimony does not carry a "special aura of reliability." *Kirkman*, 159 Wn.2d at 931.

Detective Webb testified that when he interviewed Baldwin, she had bruises and appeared to be in pain. In contrast, he testified that when he interviewed Luttrell, she had no apparent injuries or defensive wounds. Detective Webb did not comment on the credibility of Baldwin or Luttrell, and never stated or implied that he believed Luttrell to have assaulted

Baldwin. The credibility and truthfulness of Baldwin and Luttrell remained a matter for the jury to determine.

Thus, Detective Webb's testimony was not improper opinion testimony. Again, Luttrell failed to object to Detective Webb's testimony and cannot show that the testimony was improper or prejudicial. Accordingly, Luttrell fails to show that Detective Webb's testimony constituted manifest constitutional error to merit review.

### D. USE OF THE TERM "THE VICTIM"

Luttrell argues that the prosecutor and the State's witnesses improperly commented on Luttrell's guilt when they referred to Baldwin as "the victim" during testimony. We conclude that although the reference to Baldwin as "the victim" violated the trial court's order, it was harmless error.

When an error is not of constitutional magnitude, it is harmless unless there is a reasonable probability that the error materially affected the outcome of the trial. *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981); *accord State v. Halstien*, 122 Wn.2d 109, 127, 857 P.2d 270 (1993). The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole. *See State v. Thomas*, 150 Wn.2d 821, 871, 83 P.3d 970 (2004); *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).

First, we note that the trial court here granted Luttrell's motion in limine to prohibit witnesses from referring to Luttrell as "the victim." Therefore, any violation of this order was improper. Luttrell asserts that the repeated use of "the victim" when referring to Baldwin was an improper comment on her guilt and therefore prejudicial.

16

In *State v. Albino*, 130 Conn. App. 745, 760, 24 A.3d 602 (2011), the Connecticut Court of Appeals held that when the defendant asserts a self-defense claim, it is an improper comment on guilt when a prosecutor uses a term like "victim." There, the prosecutor used the term "victim" 27 times throughout the trial and used "victim" in conjunction with "murder" and "murder weapon." *Albino*, 130 Conn. App. at 766. Nonetheless, the court held that while the prosecutor's use of "the victim" was improper, the error was harmless. *Albino*, 130 Conn. App. at 778. Here, the four references to Baldwin as "the victim" over two days were sporadic. When the term was used, it was used by Detective Webb to describe his investigation steps and by State's counsel (1) when asking Officer Maini about his investigation steps and (2) a general reference to victims Officer Maini has observed during his employment as a law enforcement officer.

This case is more similar to *State v. Rodriguez*, 107 Conn. App. 685, 946 A.2d 294, *certification denied*, 288 Conn. 904 (2008), discussed by *Albino*. 130 Conn. App. at 761-62. There, the prosecution sporadically referred to the complaining witness as "the victim" while questioning two of its witnesses. *Rodriguez*, 107 Conn. App. at 701-02. The court there held that the sporadic use, combined with evidentiary basis for the jury to find that the complaining witness was a victim, did not prejudice the defendant. *Rodriguez*, 107 Conn. App. at 701-03.

As in *Rodriguez*, there was ample evidentiary basis for the court to find that Baldwin was a victim. First, Mudge testified that he witnessed the assault and saw Luttrell strike Baldwin twice with the beer bottle. Second, although Baldwin shoved Luttrell first, there was no evidence that Baldwin continued to attack Luttrell or that Baldwin had a weapon or anything that she could use as a weapon against Luttrell. Third, all of the witnesses testified about Baldwin's injuries, and the State admitted photographic evidence of the injuries. Finally, Luttrell herself

17

admitted to confronting Baldwin on November 6 and swinging a beer bottle at Baldwin after Baldwin shoved her.

In addition to the evidence presented at trial, the trial court likely cured any potential harm in its instructions to the jury to disregard any remarks, statements, and arguments made by the attorneys because they were not evidence. And we presume that jurors follow instructions. *Brunson*, 128 Wn.2d at 109.

The four references to Baldwin here as "the victim" violated the trial court's order and, thus, were improper; but any error was harmless because there was substantial evidence that Luttrell did not act in self-defense. In light of the entire record, the use of the term "the victim" by the prosecutor and the State's witnesses did not materially affect the trial outcome. Accordingly we hold that the four references to "the victim" in violation of the court's order were harmless error.

## IV. PROSECUTORIAL MISCONDUCT

Luttrell argues that the prosecutor committed prosecutorial misconduct during testimony and closing arguments and that the cumulative effect of the misconduct prejudiced her. While there may have been instances of misconduct during testimony and closing argument, we hold that Luttrell fails to demonstrate cumulative error or that any alleged error had a substantial likelihood of affecting the verdict.

### A. STANDARDS OF REVIEW AND RULES OF LAW

To prevail on her claim of prosecutorial misconduct, Luttrell must establish that the prosecutor's conduct was both improper and prejudicial. *State v. Gregory*, 158 Wn.2d 759, 809, 147 P.3d 1201 (2006). If Luttrell can establish that the conduct was improper, we review the conduct for prejudice under one of two different standards. *State v. Emery*, 174 Wn.2d 741, 760-

61, 278 P.3d 653 (2012). Where a defendant timely objects to the alleged instances of misconduct, the defendant must show that the prosecutor's misconduct had a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 760. Where a defendant fails to object to alleged misconduct, the defendant waives the error unless he or she can show that the misconduct was so flagrant and ill intentioned that no instruction could cure the prejudice and that the prejudice had a "'substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). We review alleged improper statements in the context of the entire argument, the issues in the case, and evidence presented at trial. *Gregory*, 158 Wn.2d at 810.

### B. ANALYSIS

#### 1. COMMENT ON WITNESS CREDIBILITY

First, Luttrell asserts that the prosecutor committed misconduct by asking Luttrell to affirm Mudge's testimony. Even if it was improper for the prosecutor to ask Luttrell to affirm Mudge's earlier testimony, we hold that the misconduct did not have a substantial likelihood of affecting the jury's verdict.

It is prosecutorial misconduct to ask one witness if another witness is lying, and asking a defendant to comment on the credibility of another witness is prejudicial. *State v. Ramos*, 164 Wn. App. 327, 334, 263 P.3d 1268 (2011). But it is not misconduct for a prosecutor to ask a witness if another witness is mistaken. *Ramos*, 164 Wn. App. at 334.

Here, the prosecutor did not ask Luttrell if Mudge was mistaken or probe into the differences between Luttrell's and Mudge's testimony. Instead, he asked her to affirm Mudge's testimony, which seems to straddle the line of impropriety by asking the defendant to comment on Mudge's credibility.

The prosecutor told Luttrell, "And he described a situation incredibly different than what you just described." RP (Aug. 21, 2012) at 141-42. After the trial court sustained the defense's objection, the prosecutor then asked Luttrell, "But Mr. Mudge did say that; didn't he?" RP (Aug. 21, 2012) at 142. Defense counsel objected before she could respond. The jury never heard Luttrell's affirmation of or comments on Mudge's testimony. Additionally, the trial court precluded the prosecution from following that line of questioning and instructed the jury to consider only the evidence they saw and heard at trial.

As a result, Luttrell was not prejudiced because (1) counsel timely objected before Luttrell gave any response to the prosecution's questions regarding Mudge's testimony, (2) the jury did not hear or consider any potentially prejudicial testimony, and (3) the trial court sustained Luttrell's objections, disallowing the prosecution to pursue any questioning about Mudge's testimony. Accordingly, we hold that while the prosecutor may have asked Luttrell to comment on Mudge's testimony, Luttrell fails to show that any misconduct by the prosecutor prejudiced her or had a substantial likelihood of affecting the verdict.

### 2. ARGUING FACTS NOT IN EVIDENCE

Luttrell next argues that the prosecutor committed misconduct by arguing facts not in evidence during closing argument when he stated that Luttrell "moved from a swinging, punching motion to a stabbing motion," and that the remarks were designed to make Luttrell appear more violent. RP (Aug. 21, 2012) at 159. We hold that even if it was improper for the prosecutor to argue that Luttrell made a "stabbing" motion with the beer bottle, the remarks did not have a substantial likelihood of affecting the verdict.

In light of the strong evidence presented that (1) Mudge saw Luttrell hit Baldwin with the beer bottle; (2) there was no evidence Baldwin had a weapon; and (3) Mudge was cut sometime

while he was removing Baldwin from the assault, the brief reference to the "stabbing motion," the objection to which was sustained by the judge, did not have a substantial likelihood of affecting the verdict. After defense's objection, the court admonished and instructed the jury that the arguments and remarks of the attorneys were not evidence and that they could not consider them in their deliberations. We presume that the jury followed the instructions. *Brunson*, 128 Wn.2d at 109. We hold that even assuming the remarks were improper, they did not have a substantial likelihood of affecting the jury verdict.

### 3. SELF-DEFENSE ARGUMENTS

Luttrell asserts that the prosecutor (1) misstated the law of self-defense during closing argument when he argued that Luttrell could have left the bar to avoid the fight, and (2) shifted the burden of proof during rebuttal argument when he argued that Luttrell had to use necessary force to claim self-defense. We conclude that (1) any error regarding Luttrell's ability to retreat was cured by the "no duty to retreat" instruction, and (2) the prosecutor's rebuttal statements about necessary force were reasonable inferences from the evidence. Accordingly, we hold that the prosecutor's argument was not improper.

A prosecutor must confine his argument to the law stated in the trial court's instructions, and when the prosecutor mischaracterizes the law, reversal is required if there is a substantial likelihood that the misstatement affected the jury verdict and denied the defendant a fair trial. *State v. Gotcher*, 52 Wn. App. 350, 355, 759 P.2d 1216 (1988); *State v. Estill*, 80 Wn.2d 196, 199, 492 P.2d 1037 (1972). Once the defendant produces some evidence of self-defense, the burden of proof is on the State to disprove self-defense. *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997). A defendant is entitled to a "no duty to retreat" instruction when the

evidence indicates that flight was a reasonable alternative. *State v. Williams*, 81 Wn. App. 738, 742, 916 P.2d 445 (1996).

The trial court instructed the jury that

> [i]t is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat.

CP at 56. The trial court also instructed the jury on necessary force, stating,

> Necessary means that, under the circumstances as they reasonably appeared to the actor at the time, (1) no reasonably effective alternative to the use of force appeared to exist and (2) the amount of force used was reasonable to effect the lawful purpose intended.

CP at 54.

Luttrell did not object to either instance of misconduct she alleges here; therefore, she waived the error unless she can prove that the misconduct was so flagrant and ill intentioned that no instruction could cure the prejudice and that the prejudice had a "'substantial likelihood of affecting the jury verdict.'" *State v. Lindsay*, 171 Wn. App. 808, 836-37, 288 P.3d 641 (2012) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Glassmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012)), *rev'd on other grounds*, 180 Wn.2d 423, 326 P.3d 125 (2014). First, during closing argument, the prosecutor argued that it was a reasonable alternative for Luttrell to leave the conflict instead of remaining and that she could not have felt she was in danger because it was "[t]hree girls against one girl." RP (Aug. 21, 2012) at 166. Assuming without deciding that the prosecutor's argument improperly implied Luttrell was under a duty to retreat, the error was harmless. The court instructed the jury that Luttrell had no duty to retreat. The purpose of the "no duty to retreat" instruction is to prevent a jury from "erroneously conclud[ing] that [defendants] used more force than was necessary because they did not use the obvious and

22

reasonably effective alternative of retreat." *Williams*, 81 Wn. App. at 744. That is, the "no duty to retreat" instruction is tailored to curing the exact error Luttrell complains of. Not only was the misconduct not so flagrant and ill intentioned that an instruction would not have cured it, but the proper curative instruction *was* given. This court presumes that the jury followed its instructions. *State v. Grisby*, 97 Wn.2d 493, 499, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211 (1983). Accordingly, Luttrell fails to meet her burden and she waived any error concerning the duty to retreat.

Next, in rebuttal argument, the prosecutor stated, "[Luttrell o]nly gets to claim self-defense if the force is not more than is necessary." RP (Aug. 21, 2012) at 184. Earlier in his initial closing remarks, the prosecutor correctly argued that instruction 18, the definition of "necessary," required that there appeared to Luttrell to be no "reasonably effective alternative" to striking Baldwin. RP (Aug. 21, 2012) at 165; CP at 54. It was the State's theory of the case that the assault was not self-defense because Luttrell used more force than necessary to repel the perceived danger when she repeatedly struck Baldwin with the bottle and that because she used more force than was necessary, she could not assert self-defense. Accordingly, we hold that the prosecutor's remarks were not improper because the State is given wide latitude to argue reasonable inferences from the evidence and the law.

### 4. CUMULATIVE ERROR

Luttrell asserts that the cumulative nature of the prosecutor's misconduct denied her a fair trial and requires reversal of the verdict. We disagree.

Under the cumulative error doctrine, we may reverse a conviction when the combined effect of errors during trial denied Luttrell her right to a fair trial even if each error standing alone would be harmless. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). But

cumulative error does not apply where the errors are few and have little to no effect on the outcome of the trial. *Greiff*, 141 Wn.2d at 929.

While there were two instances of possible prosecutorial misconduct—when the prosecutor asked Luttrell to comment on Mudge's testimony and when he inserted the "stabbing" remarks during closing argument—together they did not prejudice Luttrell because counsel made timely objections, and the trial court gave curative admonishments or instructions. Because the possible errors were few and Luttrell cannot demonstrate that the misconduct had an effect on the outcome of the trial, we hold that there was no cumulative error and that Luttrell received a fair trial.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Luttrell argues that her counsel was ineffective when he failed to object to improper opinion testimony and *all* instances of prosecutorial misconduct, and when he failed to propose proper instructions and to object to improper self-defense instructions. Again, we disagree.

To prevail on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice; failure to show either prong defeats this claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). Counsel's performance is deficient when it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Matters that go to trial strategy or tactics do not constitute deficient performance. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). Prejudice occurs when, but for the deficient performance of counsel, there is a reasonable probability that the outcome of the trial would have been different. *Hendrickson*, 129 Wn.2d at 78. There is a strong presumption that counsel's performance was effective. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Here, defense counsel vigorously defended Luttrell, cross-examining witnesses and objecting at several points during testimony, not least of which was an objection to the State asking Luttrell to comment on credibility of another witness. There was no need for defense counsel to object to or propose alternate jury instructions because the jury instructions were proper. Finally, we cannot say that the decision to object or not to object was not a tactical decision. We do not review tactical decisions for ineffective assistance claims. *Strickland*, 466 U.S. at 689; *Hendrickson*, 129 Wn.2d at 77-78. Even if defense counsel's actions were not tactical, Luttrell has not proven that but for her counsel's performance, the jury verdict would have been different. Accordingly, we hold that Luttrell received effective assistance of counsel.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.