[No. 17019.    Department One.    May 18, 1922.]

# THE STATE OF WASHINGTON, *Respondent*, v. LUIGI ADAMO, *Appellant*.[1]

HOMICIDE (61, 63) — EVIDENCE — ADMISSIBILITY — SELF-DEFENSE— PREVIOUS QUARRELS—APPREHENSION OF DANGER. Upon an issue of self-defense in a prosecution for homicide, the accused is entitled to show previous quarrels between a witness and the deceased and threats by the deceased, known or related to the accused before the commission of the offense, as tending to show the accused's state of mind and reason to fear bodily harm.

SAME (63)—REMOTENESS. Upon an issue of self-defense in a prosecution for homicide, deceased's threats of violence to a witness, communicated to accused five years before the commission of the offense, is inadmissible as too remote.

SAME (63)—APPREHENSION OF DANGER. Upon an issue of self-defense in a prosecution for homicide, the deceased's threats of violence to a witness are not admissible where it is not shown that they were communicated to the accused.

CRIMINAL LAW (135)—EVIDENCE—SELF-SERVING DECLARATIONS BY ACCUSED. In a prosecution for homicide, accused's statements to a witness that he carried a revolver and the reason therefor are inadmissible as self-serving.

CRIMINAL LAW (448)—APPEAL—HARMLESS ERROR—ADMISSION OF EVIDENCE. In a prosecution for homicide in which it appeared that the bullet causing the death entered the deceased's left side, it is harmless to permit the doctor who made the post mortem to testify that deceased's left side must have been towards the accused when he fired the shot.

SAME (153)—EVIDENCE—OPINIONS—MENTAL CONDITION. In a prosecution for homicide, in which the accused testified that he did not remember anything after the deceased hit him in the head with a blunt instrument, it is competent to show by physicians who examined accused's wound, that, in their opinion, it was not sufficient to affect his mind or memory.

HOMICIDE (111-1) — TRIAL—INSTRUCTIONS—SELF-DEFENSE—APPARENT DANGER. Upon an issue of self-defense in a prosecution for shooting another in an altercation, in which accused claimed to have acted upon the belief that the deceased had a revolver in his hip pocket and made a motion to draw it, it is error to instruct that the

[1]Reported in 207 Pac. 7.

accused was not justified in shooting until the deceased had come "within striking distance."

CRIMINAL LAW (316)—TRIAL—INSTRUCTIONS ALREADY GIVEN. It is not error to refuse a requested instruction which is properly covered in the general instructions.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered October 4, 1921, upon a trial and conviction of murder. Reversed.

*Corkery & Corkery,* for appellant.

*William C. Meyer* and *E. E. Alley,* for respondent.

BRIDGES, J.—The defendant was convicted of the crime of killing one Joseph Gracio, and has appealed to this court for redress.

It is not necessary here to go into any of the details of the killing, except to say that it was done on or about the 4th day of August, 1921.

(1) The appellant offered to prove by one of his witnesses that, about the middle of 1916, the deceased, in a quarrel with the witness, made a movement to his hip as if to draw a gun and made threats of violence against the witness, and that such facts were related to the appellant and were known to him prior to the commission of the offense with which he is here charged. The court refused this offer. Generally speaking, we have no doubt that a defendant charged with homicide may show, by third persons, that they had previously had quarrels with the deceased, and show the conduct of the deceased on those occasions, if such prior occurrence or occurrences were made known to the defendant before the commission of the crime for which he is being tried, because such testimony tends to show the state of mind of the defendant at the time of the killing, and to indicate whether he, at that time, had reason to fear bodily harm. *State v. Ackles,*

8 Wash. 462, 36 Pac. 597; *State v. Churchill,* 52 Wash. 210, 100 Pac. 309; 21 Cyc. 961; *Sneed v. Territory,* 16 Okl. 641, 86 Pac. 70.

It does not follow, however, that the court erred in refusing to receive the testimony offered here. The occurrence connected with the offer happened five years before the commission of the offense charged, and we must hold that it is too remote. *State v. Farris,* 26 Wash. 205, 66 Pac. 412; *State v. Palmer,* 104 Wash. 396, 176 Pac. 547. We do not find any error in the court's ruling.

(2) The appellant sought to show by his witness Aranaldi that sometime in 1918 the deceased used violent and insulting words to the witness, and accompanied the words with a movement towards his hip, and threatened to shoot the witness. This offer was refused by the court. It is not necessary to determine whether this offer concerned an occurrence which was too remote. In our opinion, the court's ruling was correct because the offer did not show that the facts concerning this 1918 assault were conveyed to the appellant, or that he knew of them, before the time of the commission of the crime charged. When a defendant seeks to excuse the killing on the ground of self-defense, it is competent for him to show the general reputation and character of the deceased for a quarrelsome disposition. The character of the deceased may be shown whether the defendant knew of it or not, because such testimony has a tendency to support the defendant's contention that the deceased was the aggressor. 21 Cyc. 961; *People v. Farrell,* 137 Mich. 127, 100 N. W. 264; 13 R. C. L. 919. In proving the character of the deceased, specific acts of violence may not be shown. Such is the rule in any kind of case where there is an effort to show character. However, where the person

accused is defending, in whole or in part, on the ground
that at the time of the homicide he believed, and had
good reason to believe, that he was in danger of his
life, or great bodily harm, he may, in addition to the
character evidence, show specific acts of the deceased
which are not too remote and of which he had knowl-
edge at the time of the killing with which he is charged.
But such acts of the deceased may not be shown unless
it appears they were brought to the knowledge of the
defendant before he committed the crime charged. See
the cases heretofore cited under subd. 1. 6 Ency. of
Evidence 761; *State v. Roderick,* 77 Ohio St. 301, 82
N. E. 1082, 14 L. R. A. (N. S.) 704. It may be conceded
that there is a conflict of authority on this last propo-
sition, some courts holding that the specific acts may
be shown whether the defendant knew of them or not;
but we think we have stated the rule which is in accord
with reason and the weight of authority. The rejec-
tion by the court of the offer to prove by Aranaldi was
proper because there was no offer to show that the ap-
pellant had knowledge of the facts within the offer.

(3) The appellant offered to prove by his witness
Schacht that he, the defendant, at a time shortly prior
to the commission of the offense with which he is
charged, told the witness that he carried a revolver
and the reasons why he did so. The court properly
rejected this testimony. It would have been purely
self-serving. Doubtless, the appellant should have
been permitted to testify why he carried a revolver at
the time of the shooting in question, but that would not
justify receiving hearsay and self-serving testimony on
that question.

(4) After the doctor who had made the post-mortem
examination had testified that one of the bullets had
entered the left side of the deceased, he was asked by

the state the following question: "Now, in what position, Doctor, would the deceased's body have to be to receive a wound like that, from a gun, with reference to the position of the man who shot the gun." Over the objections of the appellant, the witness was allowed to answer as follows: "He would have to be with his left side towards the man with the gun; his left side, just about in the position that I am to you." The authorities are not agreed as to whether a doctor who has examined the wounds may testify as to the relative attitude of the deceased and the instrument or person inflicting the wound. Some of the courts hold that the evidence cannot go farther than to describe the wound, and it is then for the jury to determine from the other testimony the relative positions of the parties. *Dial v. State,* 159 Ala. 66, 49 South. 230, 133 Am. St. 19; *Dumas v. State,* 159 Ala. 42, 49 South. 224, 133 Am. St. 17; *People v. Westlake,* 62 Cal. 303; *Price v. United States,* 2 Okl. Cr. 449, 101 Pac. 1036. The general attitude of these cases is shown by that of *People v. Westlake, supra.* There the doctor performing a post-mortem examination was asked to state, from the examinations he had made, whether the deceased, if standing or moving in a certain direction, would have received the pistol wound by a person firing from a given spot. The court said:

"Whether the wound of which the deceased died could have been inflicted by a pistol shot fired by the defendant from a certain direction, was a fact to be found by the jury from the evidence of the circumstances in which the homicide was committed, or to be inferred from the relative position of the parties at the time the shot was fired; it was not such a matter of science or skill as required the opinion of an expert."

The following are some of the cases which hold to the contrary doctrine: *Hopt v. Utah,* 120 U. S. 430, 7 Sup.

Ct. 614; *State v. Merriman,* 34 S. C. 16, 12 S. E. 619; *State v. Sullivan,* 43 S. C. 205, 21 S. E. 4; *Perry v. State,* 110 Ga. 234, 36 S. E. 781; *State v. Asbell,* 57 Kan. 398, 46 Pac. 770; *Moore v. State,* 96 Tenn. 209, 33 S. W. 1046. Our attitude on questions somewhat different, yet similar to that involved here, is shown in the case of *State v. Hart,* 118 Wash. 114, 203 Pac. 4.

We do not, however, find it necessary to choose which line of decisions we will adopt, because here it is perfectly manifest that the error, if any, was without prejudice. The bullet had entered the left side, and, in answer to the question objected to, the doctor testified that the deceased must have had his left side towards the defendant when the shooting was done. This fact is so manifest that there could not possibly be any prejudice in allowing the doctor—or anyone else—to testify to it.

(5) On cross-examination of the appellant, the prosecuting attorney asked him if he had not made certain statements at the police station, in the presence of certain named individuals, concerning the manner and circumstances of the homicide. The witness answered that he did not remember those conversations, and did not remember anything that occurred after the deceased had hit him on the head with some blunt instrument. The inference to be drawn from his testimony is that the blow so injured his brain that he did not know what took place for several hours. On rebuttal, the state, over the objection of the appellant, was permitted to undertake to prove by two physicians, who had examined the appellant's head wound, that, in their opinion, the blow was not sufficient to affect the mind or memory of the appellant. It is now claimed that the receipt of such testimony was prejudicial error. The particular ground of the objection is that:

"this ruling allowed the state by medical testimony to show the capacity of the mental processes of mind of the defendant as to his recollection of the facts of the shooting." The testimony was not offered or received for the purpose of showing that the appellant did not remember the conversations about which he had been asked. The sole purpose was to show, if possible, that the blow upon the head was not sufficient to cause him to lose his memory. Without doubt the testimony was admissible for that purpose.

(6) Complaint is made concerning some instructions given by the court to the jury. In order to discuss these intelligently it will be necessary to give some of the details of the occurrence. Both the appellant and respondent describe the quarrel which finally led to the shooting as occurring in two episodes. The appellant had been purchasing some fruit in a wholesale house, and when he had completed his work, he left the building to go out on a platform towards the alley, which was the customary way of reaching the street. When he went through the door and reached the platform, the deceased accosted him, and there were some words between them, accompanied with threats. The appellant, during this altercation, retraced his steps and came up on the platform, the deceased following him and trying to hold him, but not succeeding in so doing. The appellant again entered the wholesale house. The foregoing is a brief description of what is designated as the first episode of the quarrel. In a short time appellant again came onto the platform, and again saw the deceased there. There is a decided conflict in the testimony as to what happened following this. Generally speaking, the state's testimony tended to show that the deceased appeared to be no further interested in the controversy and appeared to have abandoned any attack which he may have pre-

viously made, and that the appellant, after walking some distance along the platform, suddenly turned, facing the deceased, and at once drew a revolver and shot him—or shot at him; that, after the first or second shot, the deceased went rapidly towards the appellant and finally reached him, when a scuffle ensued, during all of which time the appellant fired three additional shots, every one striking the body of the deceased. The appellant's theory of what occurred during the second episode was that, during the first episode, the deceased said he was going to kill him, and that when he, appellant, came out onto the platform during the second episode, the deceased was there in a threatening attitude, and again threatened to kill him, and that appellant was walking across the platform with the deceased following him, and that he saw deceased reach for his hip pocket, and he thought deceased was intending to draw a revolver, and he considered that his life was in great danger, and that he shot and killed deceased to protect himself. The testimony of all the witnesses fixed the distance between the two men when the shooting began at from about four feet to twelve or fifteen feet, and that deceased did not come within striking distance of appellant until after the first shot. It is conceded by all witnesses that the deceased did not have any revolver, but did have a bright hammer, which he probably carried in his hip pocket, and that it was with this instrument he struck appellant after the two had come together, which was after the first shot.

By instruction number six the court told the jury, in effect, that if they found that the deceased attacked the appellant and that the latter believed, and had reasonable grounds to believe, that the deceased would at once take his life, or do him great bodily harm, and that the appellant shot and killed the deceased, believing,

and having reasonable grounds to believe, it necessary to do so in order to protect himself against death or great bodily harm, then the shooting would be justifiable. The court then proceeded to give what is designated instruction number seven, of which complaint is made. That instruction is as follows:

"If, on the other hand, you believe from the evidence, beyond a reasonable doubt, that the defendant, Luigi Adamo, at the time of the shooting made no effort to avoid the encounter with the said Joseph Gracio, or to withdraw from such encounter, and that there was opportunity for the said defendant to have avoided the encounter or to have withdrawn therefrom without the necessity of shooting the said Joseph Gracio, and that he, the said defendant, fired and shot at the said Joseph Gracio before the said Joseph Gracio was within striking distance of the defendant, and that the defendant might have avoided the encounter with the said Joseph Gracio, but not doing so, did shoot and kill the said Joseph Gracio, with the intent so to do, then it will be your duty to find the defendant guilty, for a killing under such circumstances is not justifiable or excusable on any grounds whatever."

It was error to give this instruction. The court, in effect, told the jury that, under no circumstances, did the appellant have a right to shoot the deceased so long as the latter was not "within striking distance" of the appellant. There was ample testimony from which the jury might have believed that, when the shooting commenced, the parties were from eight to fifteen feet apart, and that the appellant, seeing the deceased reach for his hip pocket, believed, and had reason to believe, that his life was in great danger. The instruction with reference to coming "within striking distance" entirely ignores the appellant's chief defense. It is not the law that one who believes, and has good reason to believe, that another is about to shoot

him, or otherwise do him great bodily harm, must wait until the aggressor is within striking distance before he will be permitted to do anything which he considers necessary, and has a right to consider necessary, for the protection of his own life. In so far as our attention has been called by the appellant to the instructions of the court on the question of self-defense, it appears that they were proper and ample, but we are entirely unable to read out of the instruction this "striking distance" phrase, or to harmonize it in any way with the instructions which appear to have been proper. We think it would have been much better if the whole of instruction number seven had not been given.

(7) Complaint is made because the court refused to give appellant's requested instruction number three, which reads as follows:

"The term 'apparent danger' means not apparent danger in fact, but apparent danger to the defendant's comprehension, as a reasonable man situated as he was situated; that is, did defendant believe and have reasonable grounds to believe that he was in imminent danger of death or great bodily harm at the time of the alleged killing?"

It was not error to refuse to give this requested instruction, for the court, in a number of instructions, properly covered the identical ground suggested by this request.

We do not consider it necessary to discuss one or two other claimed errors, because it is improbable that the matters complained of will occur at a new trial.

For the error pointed out, the judgment is reversed, and the cause remanded with instructions to grant a new trial.

PARKER, C. J., MITCHELL, and TOLMAN, JJ., concur.