IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,      )      No. 33299-3-III
)
         Respondent,      )
)
     v.      )      PUBLISHED OPINION
)
JESUS DUARTE VELA,      )
)
         Appellant.      )

LAWRENCE-BERREY, A.C.J. — Jesus Duarte Vela[1] appeals his conviction for

second degree murder. Duarte Vela asserted self-defense at trial. The trial court

permitted Duarte Vela to testify he was fearful of the victim, but would not allow Duarte

Vela to explain why he feared the victim or the severity of the injury he feared. The jury

rejected Duarte Vela's self-defense claim and convicted him of second degree murder.

On appeal, Duarte Vela argues the trial court's evidentiary rulings were erroneous

and violated his right under the Sixth Amendment to the United States Constitution to

present a defense. We agree and, therefore, reverse his conviction for second degree

---

[1] Because of the number of similar first and last names, we refer to the appellant as
"Duarte Vela," and his family members by their first names.

murder and remand for retrial.

## FACTS AND PROCEDURE

A.   FACTS

On February 20, 2014, Duarte Vela shot and killed Antonio Menchaca in

Okanogan County.  The question at trial was *why* Duarte Vela shot and killed Menchaca.

Menchaca was once married to Blanca Duarte, Duarte Vela's sister.  The former

couple had two children, Jesus and a younger sister.  Menchaca left Okanogan in 2007.

His whereabouts during the seven years between then and the shooting were not clearly

established: At some point after 2007 he had been incarcerated, in May 2012 border

patrol agents returned him to Mexico and, in February 2014, he travelled from Mexico to

his sister's home in Fresno, California.

On February 18, 2014, Menchaca traveled from his sister's home to Okanogan, in

part to see his children.  Menchaca arrived at Blanca's apartment in the morning hours of

February 20.  Jesus, then 17 years old, saw his dad hugging his younger sister around 7:00

a.m. that morning.  Jesus was afraid and called Duarte Vela, his uncle.  He explained to

Duarte Vela that his dad was at the apartment and asked Duarte Vela to pick him up after

school that day.  Duarte Vela's wife, Billie Jo Wilson, was home when Duarte Vela

received the call and learned from Duarte Vela that Menchaca was back in town.

2

Duarte Vela decided to go to his sister's apartment to make sure she and her family were safe. He knew that Menchaca had threatened Blanca in the past. Duarte Vela was fearful of Menchaca and concerned that Menchaca posed a threat to Duarte Vela's family. For these reasons, he took his gun with him.

When Duarte Vela arrived at his sister's apartment, Menchaca was the only person there. Duarte Vela asked why he was at the apartment and told him that Blanca did not want to see him. Duarte Vela told him to stay away from Duarte Vela's family. Menchaca assured him that he would return to Fresno. Duarte Vela felt relieved and went to work.

That afternoon, Billie Jo, together with her two younger children, drove to the turnout at the head of her shared driveway to pick up her oldest daughter who was arriving by school bus. A sport utility vehicle (SUV) pulled into the turnout just after Billie Jo parked. The SUV driver and passenger both looked directly at Billie Jo. She thought the passenger was Menchaca. As Duarte Vela arrived at the turnout, the SUV left. Billie Jo told her husband there were two people in the SUV, she thought the passenger was Menchaca, and she was frightened. She knew that Menchaca had caused problems with the family years earlier. Duarte Vela was frightened for his children and drove after the SUV.

3

Duarte Vela signaled for the SUV driver to pull over, and he did. Duarte Vela pulled alongside the SUV. Duarte Vela recognized the driver as Luis Martinez, a distant relative. He did not see anyone else in the SUV. Duarte Vela said his wife reported she saw an SUV with two people in it and thought that one of the people was Antonio Menchaca. Duarte Vela explained he was concerned because he did not know what Menchaca's plans were and said he did not want Menchaca to cause any problems for his family. Martinez assured Duarte Vela, "'It's only by [sic] myself.'" 2 Report of Proceedings (RP) (Jan. 28, 2015) at 438. He did not mention that Menchaca had hidden himself in the back seat as they had left the turnout.

Duarte Vela returned to his wife. She was still frightened. Soon after, they both saw Martinez drive by with Menchaca in the front passenger seat. Duarte Vela realized he had been lied to, Menchaca was in the SUV a few minutes earlier, and Menchaca was not returning to Fresno as he had earlier promised.

Duarte Vela, even more concerned that Menchaca posed a threat to his family, followed the SUV. Martinez saw Duarte Vela and pulled his SUV to the side of the road and parked it. Duarte Vela stopped his truck in front of it. Duarte Vela and the two men exited their vehicles. Duarte Vela still had his gun hidden in his pocket. The way the two men walked toward Duarte Vela caused him to become nervous. Duarte Vela asked why

4

they were earlier parked by his family. Menchaca said something about being owed money by a person who lived near the turnout, but Duarte Vela did not believe him. Menchaca's tone of voice sounded threatening to Duarte Vela. At about this time, Duarte Vela began to draw his gun and Menchaca's hand went inside his pocket to reach for something. Duarte Vela fired two or three shots. One shot struck Menchaca in one arm, went through his torso, and lodged in his other arm. Either during or just before the shots, Menchaca displayed a paper in his hand, not a weapon. An injured Menchaca ran into a nearby orchard where he soon died.

Martinez, and also Duarte Vela or his wife, called 911. Both callers said Duarte Vela shot Menchaca. Two sheriff's deputies went to Duarte Vela's house and found him outside standing on the porch with a telephone in his hand. Duarte Vela was advised of his rights and agreed to answer questions. Duarte Vela related the events of that day, explained he was both angry and fearful when he confronted Menchaca that afternoon, and admitted, "'I didn't do the right thing probably.'" 3 RP (Jan. 29, 2015) at 513. The State charged Duarte Vela with various firearm offenses and second degree murder.

The trial occurred in January 2015. Prior to jury selection, the State moved in limine to exclude evidence of Menchaca's prior bad acts. Duarte Vela responded that he

5

sought to admit certain prior bad acts of Menchaca known to him to establish the reasonableness of his fear of Menchaca.

B.    CONTESTED EVIDENTIARY RULINGS

    *1.    Menchaca's prison threat made around spring of 2012*

Duarte Vela proffered the testimony of his brother, Alphonso, who would testify that he had a telephone conversation while Menchaca was in prison two or three years earlier during which Menchaca threatened to return to Okanogan and kill Duarte Vela's entire family. Alphonso also would testify that he told Duarte Vela of this threat.

Duarte Vela argued that the prison threat was admissible to show his state of mind—reasonable fear of Menchaca—which was an element of his self-defense case. The State argued that the threat was too remote, not relevant to self-defense, and not admissible under any hearsay exception. The trial court eventually refused to allow Duarte Vela and his brother to testify about Menchaca's prison threat, mostly because the threat was too remote in time.

The trial court explained:

> Well, I'm concerned about the remoteness and the uncertainty of the timeline. The range two to three years seems to me to be pretty broad. I would like it if we could pin that down.
>     The other concern I have is that these—if it was two to three years ago and assuming—Well, the problem is we don't know, number one, if the victim was in prison at the time. I assume he was. I don't really have any

6

reason to doubt that. But what I don't know is when he got out. Did he get out within a week or two of that phone call or did he get out a week or two prior to coming to the State of Washington? And the reason I think that's important is because if he got out within a short time of making the phone call but he never came to Washington, then it seems to me it's—there's a relevancy issue. There's a remoteness issue. On the other hand, if he got out within just a week or two or a month, some short period of time, then indeed it may be highly relevant and it is not remote. So I think what I have to do is to hear more.

And, [defense counsel], I'm going to advise you to call Alfonso Duarte as a witness. But understand, I'll be listening very closely for . . . foundational questions . . . to establish the time frame for . . . when this phone call happened and if it can be established as to when the victim got out of prison so that the Court is able to rule on the issue of remoteness.

RP (Jan. 27, 2015) at 12-13. After further argument from the State, the court reiterated,

"If he was released two or three years ago, then indeed this is too remote." RP (Jan. 27,

2015) at 14.

Later at trial, the State brought forth a report from the border patrol that it had

returned Menchaca to Mexico in May 2012. This showed that Menchaca had been

released from prison before that time, which would have been at least two and one-half

years before the January 2015 trial. Presumably because of the trial court's comments

that "two or three years ago [was] too remote," Duarte Vela did not call Alphonso to

testify.

2. *Menchaca's abduction of Maricruz Duarte in 2007*

7

Duarte Vela also proffered the testimony of his younger sister, Maricruz Duarte, who would testify that Menchaca had abducted her in 2007 when she was just 15 years old, and that Duarte Vela knew about this. The State argued it had evidence Maricruz and Duarte Vela had retracted portions of the abduction accusation and that the testimony was not relevant to Duarte Vela's state of mind. The trial court excluded the evidence on the basis that the testimony was irrelevant and inadmissible.

> 3.  *Menchaca's domestic violence against Blanca for years until they separated five or six years before trial*

Duarte Vela also proffered the testimony of Blanca who would testify that Menchaca had repeatedly battered her throughout their marriage, including after they left Okanogan in 2007 to go to Fresno, and that she had told Duarte Vela about this. She would have testified that the domestic violence occurred throughout their marriage and ended five or six years before trial, presumably because they separated at that time.

Duarte Vela also sought to offer the testimony of his wife, who witnessed some of the domestic violence when the couple lived in Okanagan.

The trial court excluded both testimonies as too remote in time.

> 4.  *Miscellaneous evidence excluded throughout trial*

In addition to excluding the above offered testimonies, the trial court excluded Duarte Vela from testifying: (1) what he had been told by his family members about

Menchaca's threat to kill his family and Menchaca's domestic violence against Blanca, (2) why he feared Menchaca being around his family, (3) why he believed he needed to arm himself when he went to his sister's apartment to confront Menchaca, (4) that his wife told him the SUV driver and Menchaca gave her a threatening look when the SUV first parked in or near the pullout, (5) why he followed the SUV the first time, (6) why he believed there were two people in the car when he followed the SUV the first time, (7) Martinez's statement to him that he was alone in the SUV, (8) what he felt when he saw Martinez later drive by with Menchaca in the passenger seat, (9) why he had an elevated fear as he went after the SUV for the second time, (10) his wife being upset when he returned and explained that Menchaca was not in the SUV, (11) his belief that something was wrong when Martinez and Menchaca both got out of the car and walked toward him, (12) what he feared Menchaca and Martinez might do as they walked toward him, and (13) the degree of bodily harm he feared just before he shot Menchaca, as Menchaca became upset and reached into his pocket.

C.    "No Duty to Retreat" Instruction and Jury Verdict

Toward the end of trial, Duarte Vela requested a "no duty to retreat" instruction. In denying the instruction, the trial court explained:

> I am not going to allow your proposed . . . "[no] duty to retreat" instruction.
> And the reason that I'm not allowing that is because Mr. Duarte testified

9

that at some point he did retreat, that he did back up. And so as I read that instruction and I read the case law and the comments on that instruction, it seems to me that it is not applicable, and I'm not going to allow it.

4 RP (Jan. 30, 2015) at 747. Defense counsel did not take formal exception to the trial court's refusal.

The trial court instructed the jury, the parties gave their closing arguments, and the jury deliberated. The jury returned a verdict of guilty on all counts.

Duarte Vela appealed.

## ISSUES

1.    Did the trial court violate the Sixth Amendment to the United States Constitution when it refused to let Duarte Vela testify why he feared Menchaca, when it refused to allow Duarte Vela's witnesses to testify what they had told Duarte Vela about Menchaca's threat and past violence, and when it refused to allow Duarte Vela to testify about the degree of bodily harm he feared just before he shot Menchaca?

2.    Did the trial court err in refusing Duarte Vela's "no duty to retreat" instruction?

## ANALYSIS

A.    SIXTH AMENDMENT RIGHT TO PRESENT A DEFENSE

1.    *Standard of review*

10

We review a claim of a denial of Sixth Amendment rights de novo. *State v. Jones,* 168 Wn.2d 713, 719, 230 P.3d 576 (2010). Since Duarte Vela argues that his Sixth Amendment right to present a defense has been violated, we review his claim de novo.

2. *Contours of the right*

The right to present testimony in one's defense is guaranteed by both the United States and the Washington Constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Hudlow,* 99 Wn.2d 1, 14, 659 P.2d 514 (1983). In *Jones,* our Supreme Court wrote:

> "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi,* 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). A defendant's right to an opportunity to be heard in his defense, including the rights to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence. *Id.*
> These rights are not absolute, of course. Evidence that a defendant seeks to introduce "must be of at least minimal relevance." [*State v. Darden,* 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)]. Defendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence. *State v. Gregory,* 158 Wn.2d 759, 786 n.6, 147 P.3d 1201 (2006).

*Jones,* 168 Wn.2d at 720. The *Jones* court continued:

> "[I]f relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." *Darden,* 145 Wn.2d at 622. The State's interest in excluding prejudicial evidence must also "be balanced against the defendant's need for the information sought," and relevant information can be withheld only "if the

11

State's interest outweighs the defendant's need." *Id.* We must remember that "the integrity of the truthfinding process and [a] defendant's right to a fair trial" are important considerations. *State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983). We have therefore noted that for evidence of *high* probative value "it appears no state interest can be compelling enough to preclude its introduction consistent with the Sixth Amendment and Const. art. 1, § 22." *Id.* at 16. . . .

*Id.* (alterations in original).

In concluding its discussion of the Sixth Amendment, the *Jones* court wrote:

*[T]he clear implication [is] that evidence of high probative value could not be restricted regardless of how compelling the State's interest may be if doing so would deprive the defendant[ ] of the ability to testify to [the defendant's] versions of the incident. . . .*

*Id.* at 721 (emphasis added).

> 3. *The parties' arguments about whether Duarte Vela's Sixth Amendment right was violated*

As previously noted, Duarte Vela argues the trial court's evidentiary rulings violated his right to present a defense. He principally argues the trial court committed reversible error when it excluded evidence relating to: (1) Menchaca's prison threat, (2) Menchaca's years of domestic abuse against Blanca, (3) Menchaca's abduction of Maricruz, (4) why he feared Menchaca, and (5) the type of bodily harm he feared just before he shot Menchaca.

The State responds that the above evidence was inadmissible and irrelevant, and the Sixth Amendment does not permit the introduction of inadmissible and irrelevant evidence. The State argues that the trial court's exclusion of the above evidence, in addition to the other previously listed miscellaneous evidence, was proper because the evidence was either (a) hearsay, (b) untrustworthy, (c) too remote in time, (d) improper character evidence, or (e) speculative. We disagree.

> *(a) The excluded evidence was not hearsay because the evidence was not offered for its truth, but to establish Duarte Vela's state of mind*

"Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Whether an out-of-court statement is hearsay depends on the purpose for which the statement is offered. *State v. Hamilton*, 58 Wn. App. 229, 231, 792 P.2d 176 (1990).

In considering a claim of self-defense, the jury must take into account all the facts and circumstances known to the defendant. *State v. Allery*, 101 Wn.2d 591, 594-95, 682 P.2d 312 (1984); *State v. Wanrow*, 88 Wn.2d 221, 234, 559 P.2d 548 (1977). Because the "'vital question is the reasonableness of the defendant's apprehension of danger,'" the jury must stand "'as nearly as practicable in the shoes of [the] defendant, and from this

13

point of view determine the character of the act.'" *Wanrow*, 88 Wn.2d at 235 (quoting *State v. Ellis*, 30 Wash. 369, 373, 70 P. 963 (1902)). Evidence of a victim's propensity toward violence that is known by the defendant is relevant to a claim of self-defense "'because such testimony tends to show the state of mind of the defendant . . . and to indicate whether he, at that time, had reason to fear bodily harm.'" *State v. Cloud*, 7 Wn. App. 211, 218, 498 P.2d 907 (1972) (quoting *State v. Adamo*, 120 Wash. 268, 269, 207 P. 7 (1922)). Thus, such evidence is admissible to show the defendant's reason for fear and the basis for acting in self-defense. *State v. Walker*, 13 Wn. App. 545, 549, 536 P.2d 657 (1975).

Here, Duarte Vela sought to introduce Menchaca's threat to kill Duarte Vela's family and Menchaca's past domestic violence not to prove they were true, but for the very relevant purpose of showing the reasonableness of his fear of Menchaca. The evidence, therefore, was not hearsay. To the extent the trial court excluded this and several miscellaneous statements offered by Duarte Vela to show his state of mind, the trial court erred.

The reasonableness of Duarte Vela's fear of Menchaca is one of two components of his self-defense claim, the other component being the degree of bodily harm he feared just before he shot Menchaca. Menchaca's past threat to kill Duarte Vela's family was

central to Duarte Vela's ability to explain the reasonableness of his fear. Unless the evidence was inadmissible under the State's other arguments, the trial court's exclusion of this evidence "deprive[d] [Duarte Vela] of the ability to testify to [his] versions of the incident." *Jones*, 168 Wn.2d at 721.

> *(b) Probative evidence, even if suspect, should be admitted and tested by cross-examination*

The State cites ER 403 for the general rule that a trial court has discretion to prevent a jury from considering a victim's propensity toward violence if its probative value is substantially outweighed by the danger of unfair prejudice or misleading the jury. But the ER 403 balancing of probative value versus unfair prejudice is weighed differently when the defense seeks to admit evidence that is central to its defense. The evidence of Menchaca's threat to kill Duarte Vela's family was highly probative of his defense, and the Sixth Amendment right to present a defense thus requires admitting such highly probative evidence. *Jones*, 168 Wn.2d at 720-21. We have previously held that ER 403 cannot be used to exclude "crucial evidence relevant to the central contention of a valid defense." *State v. Young*, 48 Wn. App. 406, 413, 739 P.2d 1170 (1987).

The State makes the point that weak or false evidence is not probative. But if the evidence is weak or false, cross-examination will reveal this, and any sting caused by the admission of false evidence will not only be removed, but will invite prejudice to the

15

defendant who introduced such evidence. For these reasons, the trial court should admit probative evidence, even if suspect, and allow it to be tested by cross-examination. In this manner, the jury will retain its role as the trier of fact, and *it* will determine whether the evidence is weak or false.

In a related argument, the State argues that state of mind evidence is admissible only if there is (1) some degree of necessity to use the out-of-court statement, and (2) there is circumstantial probability that the statement is trustworthy. For this proposition, the State cites *State v. Parr*, 93 Wn.2d 95, 606 P.2d 263 (1980). *Parr* is not on point.

In *Parr*, the State sought to admit out-of-court statements of the deceased victim to show the victim was afraid of the defendant. *Id.* at 98. The *Parr* court sought to balance the need for this evidence with the prejudice of the defense being unable to rebut the statement. *Id.* at 99. The *Parr* court ruled, in a homicide case where the victim's state of mind is relevant, the State may offer evidence of the victim's fear of the defendant if there is circumstantial probability that the statement is trustworthy. *Id.* at 98-99.

Here, we are not concerned with the State admitting evidence. Rather, we are concerned with the defendant's right to present a defense under the Sixth Amendment.

The proper test for admitting or excluding evidence in that context is set forth in *Jones*, as quoted above.

The State, citing ER 803(a)(3), argues that Duarte Vela could not testify about his own *past* state of mind because that rule permits statements describing the declarant's *then-existing* state of mind. The State's argument misses the point. ER 803 concerns out-of-court statements. ER 803(a)(3) excepts from hearsay an out-of-court statement made by a declarant concerning the declarant's then-existing mental, emotional, or physical condition. In general, Duarte Vela sought to testify only about *his* own past emotion, not a declarant's. ER 803(a)(3) therefore does not apply. Perhaps once or twice, Duarte Vela sought to testify that his wife told him she was nervous or frightened. Those statements are declarations that qualify as admissible hearsay under the noted exception.

### (c) Remoteness

#### i. Menchaca's prison threat

In arguing that Menchaca's prison threat was too remote in time, the State relies on *Adamo*, 120 Wash. 268.

In that case, Adamo killed Joseph Gracio in August 1921. *Id.* at 269. Implied is Adamo's assertion that he shot Gracio in self-defense because he reasonably feared Gracio. *Id.* Adamo sought to establish the reasonableness of his fear by introducing

17

statements of two witnesses. Gracio had separately threatened violence against each witness and made a threatening gesture as if he had a gun. *Id.* at 269-70. The trial court prohibited both witnesses from testifying. *Id.* at 270. The *Adamo* court held the trial court did not err with respect to the first witness because the event occurred five years before the shooting and was, thus, too remote. *Id.* at 269-70. The *Adamo* court also held the trial court did not err with respect to the second witness because the event, which occurred three years before the shooting, was unknown to Adamo when he shot Gracio. *Id.* at 270.

We find *Adamo* not controlling for three reasons. First, in *Adamo*, the trial court excluded the victim's past violent behavior known to the defendant because that behavior occurred *five* years before the killing. Here, the trial court excluded Menchaca's prison threat known by Duarte Vela that occurred only *two* years before the shooting.

Second, Menchaca may have been delayed in accomplishing his threat by being in prison and then being deported back to Mexico. The evidence indicates Menchaca did not reenter the United States and travel back to Washington State until the day before Duarte Vela killed him. The fact that Duarte Vela had not seen Menchaca since he threatened to kill Duarte Vela's family could account for why Duarte Vela felt threatened

18

when Menchaca, unexpectedly, and for the first time, appeared around his family two years after the threat.

Third, *Adamo* did not analyze the evidentiary issue in light of the defendant's Sixth Amendment right to present a defense. As noted earlier, *Jones* and authorities cited therein, have altered a court's calculus for admitting evidence probative of the defendant's version of events, even evidence of "minimal relevance." *Jones*, 168 Wn.2d at 720-21. Menchaca's prison threat to kill Duarte Vela and his family, made two years before the shooting, was more than minimally relevant, and in fact was the most important evidence to establish Duarte Vela's self-defense claim.

It is the role of the jury, not the trial judge, to weigh the reasonableness of Duarte Vela's fear, and to do so by considering "*all* the facts and circumstances known to the defendant '[so as] to stand as nearly as practicable in the shoes of [the] defendant.'" *Wanrow*, 88 Wn.2d at 234-35 (quoting *Ellis*, 30 Wash. at 373). For example, was Duarte Vela's fear reasonable two years after the prison threat, what did Duarte Vela believe motivated Menchaca's threat so it might be a lasting rather than a transitory threat, and what did Duarte Vela know about Menchaca that increased or decreased the significance of the threat. These questions are all factual and, except in extreme cases, cannot be answered as a matter of law. When it comes to ensuring a defendant's Sixth Amendment

19

right to present a defense, it is best to admit relevant evidence and trust the State's cross-examination to ferret out falsities.

### ii. *Menchaca's history of domestic violence*

Standing alone, Menchaca's history of domestic violence against Blanca was irrelevant. Simply because a person commits domestic violence against his spouse does not make it more likely that he would, several years later, use a gun to kill a sibling of that spouse. However, one may not consider Menchaca's history of domestic violence against Blanca in isolation. *Wanrow*, 88 Wn.2d at 234-35. Menchaca's extensive history of domestic violence against Blanca could have caused Duarte Vela to attach more credibility to Menchaca's prison threat and for a longer time. If so, the trial court should exercise its discretion and admit that history. We are unable to determine whether Menchaca's history of domestic violence has any relationship to Menchaca's prison threat. For this reason, we do not provide a dispositive answer.

### iii. *Menchaca's abduction of Maricruz*

Similar to our above analysis, Menchaca's abduction of Maricruz, standing alone, is irrelevant. But because we are unable to determine whether this evidence has any relationship to Duarte Vela's perception of Menchaca's prison threat, we do not provide a dispositive answer.

20

*(d) The evidence sought to be admitted was not character evidence*

In arguing that the trial court properly excluded Duarte Vela's evidence about

Menchaca as improper character evidence, the State cites *State v. Hutchinson*, 135 Wn.2d

863, 959 P.2d 1061 (1998). *Hutchinson* is not on point.

In 1987, two deputies arrested Hutchinson for driving under the influence. *Id.* at

867. In their pat down for weapons, they failed to find a gun hidden on Hutchinson's

person. *Id.* Soon after they arrived at the garage attached to the sheriff's office, the

deputies deposited their guns in a lockbox. *Id.* Hutchinson then shot and killed both

deputies. *Id.* at 868. Hutchinson stole the police car, escaped, but was soon arrested. *Id.*

After *Miranda*[2] warnings, Hutchinson claimed he acted in self-defense because the

deputies had assaulted him. *Id.* At trial, Hutchinson sought to admit evidence of a 1980

performance evaluation accusing one of the deputies of being aggressive and physical

with intoxicated arrestees. *Id.* at 870. In addition, Hutchinson sought to admit evidence

of the reputation of the local sheriff's office and specific acts of violence or intimidation

by one of the deputies. *Id.* The trial court allowed evidence only of the general

reputation of the deputies "'for a pertinent trait of character relevant hereto.'" *Id.* The

*Hutchinson* court affirmed, and held:

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

> The remaining witnesses would have testified about specific acts allegedly committed by [one deputy], which the Defendant characterized as violent. The trial court correctly excluded these witnesses' testimony because evidence of a character trait—here, [the deputy's] allegedly violent disposition—must be in the form of reputation evidence, not evidence of specific acts. ER 404(a)(2); ER 405(a). Specific acts may be used to prove character only where the pertinent character trait is an essential element of a claim or defense. ER 405(b). Specific act character evidence relating to the victim's alleged propensity for violence is not an essential element of self-defense.

*Id.* at 886-87.

*Hutchinson* involves ER 404(a)(2) and ER 405, which concerns what evidence is admissible to prove the character of the victim. There, Hutchinson did not claim he knew of the deputies' past violent acts. For this reason, he needed to rely on character evidence to prove that the deputies acted in conformance with their alleged character.

Here, Duarte Vela was not attempting to prove Menchaca's character. Rather, Duarte Vela was attempting to establish that he reasonably feared Menchaca because of what he believed about Menchaca at the time he shot him. It is well established that a victim's specific acts of violence, *if known by the defendant*, are admissible when the defendant asserts self-defense. *See, e.g., Walker,* 13 Wn. App. at 549-50; *Cloud,* 7 Wn. App. at 218.

### (e) The evidence was not speculative

The State defends several of the trial court's evidentiary exclusions on the basis that the evidence offered was speculative. The one complained of by Duarte Vela was his attempt to testify about the degree of bodily harm he feared just before he shot Menchaca.

Deadly force may be used if one reasonably fears great bodily harm or death. *State v. Walden*, 131 Wn.2d 469, 474, 932 P.2d 1237 (1997); RCW 9A.16.050. If a person remembers being fearful that the victim was going to cause him great bodily harm or death, it is not speculative to testify to that fact. Moreover, the degree of harm one actually feared is relevant to the degree of harm one *reasonably* feared, which is a component of Duarte Vela's self-defense claim. For this reason, Duarte Vela's excluded testimony about the degree of harm he feared was highly probative, not speculative, and therefore admissible. The trial court erred when it excluded this highly probative evidence. *Jones*, 168 Wn.2d at 720.

> 4. *The trial court's exclusion of admissible evidence violated Duarte Vela's Sixth Amendment right to present a defense*

Whether the exclusion of testimony violated the defendant's Sixth Amendment right to present a defense depends on whether the omitted evidence evaluated in the context of the entire record, creates a reasonable doubt that did not otherwise exist. *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006).

23

Here, the trial court precluded Duarte Vela from testifying why he feared Menchaca. It also precluded Duarte Vela's witnesses from testifying that they told Duarte Vela about Menchaca's violent acts and threat. The trial court further precluded Duarte Vela from testifying that as Menchaca began drawing something from his pocket, he feared Menchaca would cause him great bodily harm or death. These evidentiary rulings precluded Duarte Vela from presenting a legal defense to the killing that he admitted to. The omitted evidence creates a reasonable doubt that did not otherwise exist. For this reason, the trial court's evidentiary rulings violated Duarte Vela's Sixth Amendment right to present a defense.

B.     THE TRIAL COURT DID NOT ERR WHEN IT REFUSED TO GIVE DUARTE VELA'S "NO DUTY TO RETREAT" INSTRUCTION

Duarte Vela contends the trial court erred when it refused to give his requested jury instruction on no duty to retreat. He contends the trial court erred because it failed to analyze whether he was in full retreat.

Where "a jury may conclude that flight is a reasonably effective alternative to the use of force in self-defense, the no duty to retreat instruction should be given." *State v. Williams*, 81 Wn. App. 738, 744, 916 P.2d 445 (1996). Even when a defendant testifies that he or she is backing up, the trial court should determine whether the retreat is a full-fledged retreat or instead the ebb-and-flow or circling of a street fight. *Id.* at 743.

24

Duarte Vela's testimony was that he stepped out of his truck. While he was behind his truck, Menchaca and Martinez approached him from two angles, as if to flank him. Duarte Vela simply testified that when pulling out his gun, "I stepped back a little bit." 3 RP (Jan. 29, 2015) at 629. The trial court reasoned in denying the motion, "the reason that I'm not allowing that is because Mr. Duarte testified that at some point he did retreat, that he did back up." 4 RP (Jan. 30, 2015) at 747.

We may affirm the trial court on any basis supported by the record. *Amy v. Kmart of Wash. LLC*, 153 Wn. App. 846, 868, 223 P.3d 1247 (2009). The State did not argue that Duarte Vela had a duty to retreat. This is because the facts would not support such a theory. Duarte Vela's theory was that Menchaca, at close range, was angry and in the process of drawing a gun, so he shot Menchaca in self-defense. Because the facts would not support retreat as an option to someone pulling a gun at close range and because the State did not argue that Duarte Vela could have retreated, the trial court did not err in refusing the instruction.

CONCLUSION

Although we deny Duarte Vela's argument of instructional error, we conclude the

trial court's evidentiary rulings denied Duarte Vela his Sixth Amendment right to present

a defense.[3] We therefore reverse and remand for a new trial consistent with this opinion.

Lawrence-Berrey, A.C.J.

I CONCUR:

Siddoway, J.

---

[3] Duarte Vela also filed a statement of additional grounds for review (SAG). His SAG generally asks us to consider all the facts, including the excluded evidence. We consider his argument subsumed by his attorney's Sixth Amendment argument, which we have addressed. We therefore do not separately address the issues raised in Duarte Vela's SAG.

No. 33299-3-III

KORSMO, J. (dissenting) — A trial judge does not lose his gatekeeper function on evidentiary issues merely because a criminal defendant asserts a constitutional right to present the evidence. We still review the judge's evidentiary rulings for abuse of discretion within the defense theory of the reason why the evidence ought to be admitted. Here, the defendant testified to his fear of the victim and why he was afraid of him; the trial judge did not abuse his authority in deciding that "enough was enough" and limiting some of the corroborating evidence. Nonetheless, the majority reverses the trial judge because of his failure to distinguish Washington Supreme Court precedent as the majority does. The conviction should be affirmed.

The main problem for the defense is that this was a pretty weak case of self-defense. Jesus Duarte Vela shot his former brother-in-law, a man whom he had not spoken to in the seven years since the victim departed from town, without warning after tracking him down for the third time that day and forcing the car he was in to stop. There was no reason to believe the victim was armed, so Mr. Duarte Vela's fear that his victim was reaching for a nonexistent weapon understandably was rejected by the jury. The excluded evidence went to the issue of why the defendant allegedly was afraid of his victim, a topic that was addressed through the defendant's own testimony and one that

the prosecutor did not challenge throughout a lengthy cross-examination. No evidence was offered that Mr. Duarte Vela had reason to believe the victim was reaching for a gun at the time of the shooting. If the defense had evidence that the victim typically was armed or had threatened to use a firearm in the past, they did not offer it. That corroboration was lacking. Whether or not the victim had abused the defendant's sister eight years earlier in California did not enlighten the jury on the critical issue in the case. Accordingly, the trial court did not abuse its discretion in excluding that evidence.

The majority undertakes a very nice analysis of two Washington Supreme Court decisions, but then attempts to apply them to the facts of this case as if it were acting as the trial judge rather than as the reviewing court. Noticeably lacking in the analysis is an indication that the trial court *had* to apply either case in the same manner.[1]

Oldest is *State v. Adamo*, 120 Wash. 268, 207 P. 7 (1922). There our court affirmed a trial court ruling that excluded, on remoteness grounds, a threat made by the victim to the defendant five years earlier. Here, the trial judge excluded evidence of an alleged threat made by the victim from prison at least two to three years earlier for the

---

[1] This analytic error began early in our review process. Prior to oral argument, this court sent a letter to the parties directing them to be prepared to discuss various noted reasons why *State v. Adamo*, 120 Wash. 268, 207 P. 7 (1922), could be distinguished from this case and asking if it was an abuse of discretion for the trial court to not distinguish *Adamo*. We did not ask the parties to address the more pertinent question of whether the trial court was *required* to distinguish a case that it had merely used as supporting, rather than controlling, authority.

2

same reason, citing to *Adamo*. Nothing in this record indicates that the trial judge believed he *had* to follow *Adamo* or thought the case compelled exclusion of the evidence. Instead, the veteran trial judge determined that the evidence was too remote and excluded it. That was a tenable ground for excluding the evidence. In the absence of compelling authority requiring the trial judge to admit the evidence, we should be affirming since there was no abuse of discretion.

The majority suggests that *Adamo* and other cases involving discretionary evidence rulings have been eclipsed by *State v. Jones*, 168 Wn.2d 713, 230 P.3d 576 (2010). The short answer is "no" since *Jones* did not change the controlling law in the least. There our court reversed a conviction because the defendant had not been able to present his version of the events. *Id.* at 724. The entire subject matter, a consent defense to the rape allegation, had been excluded. That was not the case here, nor did defense counsel ever make such a claim to the trial judge. Mr. Duarte Vela was not able to present all of the supporting evidence he desired to offer, but he was able to present his defense. *Jones* simply does not stand for the proposition that the defense is entitled to put in all relevant evidence it possesses in support of the defense.

Illustrative is a subsequent case authored by Justice Owens, the author of the *Jones* opinion. *State v. Perez-Valdez*, 172 Wn.2d 808, 265 P.3d 853 (2011). There the defense to allegations of rape by two of the defendant's adoptive daughters "was centered on a theory that the girls were lying." *Id.* at 811. The defense sought to show that the girls

3

were willing to take "extreme actions" to be removed from homes, "potentially including lying about rape." *Id.* The defense was allowed to offer evidence about house rules that the girls did not like, but the trial judge excluded evidence that the girls had committed arson to get moved out of a foster home. *Id.* The Supreme Court affirmed, noting that while the trial judge could have admitted the evidence under the rules, the court did not abuse its discretion in excluding the evidence. *Id.* at 816-17. The trial court was in the same position here. The trial judge could have, but was not required to, allow the corroborating evidence.

There is a fine line between admissible evidence and evidence that *must* be admitted. The constitutional right to present a defense means that the defense theory must be allowed when there is admissible evidence to support it. *Jones*, 168 Wn.2d 713. That constitutional right does not mean that *any and every bit of evidence* offered by the defense in support of its theory is required to be admitted. *Perez-Valdez*, 172 Wn.2d 808. Trial judges still retain discretion under ER 401, ER 403, and all of the other evidentiary rules to consider the necessity of the evidence in light of the case record and the proffered theory of admissibility. *Id.* The Rules of Evidence exist for a reason, and both sides are entitled to a fair trial. We count on trial judges to apply the rules and afford them great discretion in doing so. The evidence excluded here, to the extent it even existed, was deemed too remote to the actual issues in the trial. That call was for the trial judge, not this court.

4

No. 33299-3-III
*State v. Duarte Vela* (dissent)

Here, the defense provided sufficient evidence to raise its self-defense theory and supported that theory with the defendant's testimony. It was not allowed to offer everything it desired, but it had enough to make its case. That is all that the constitution requires. There are cases where the admission of too little corroborating evidence might effectively foreclose the defense, but this was not one of those instances.

The trial court found the evidence too remote to be admitted. Since that was a tenable basis for ruling, we should be affirming the trial court. I therefore dissent.

Korsmo, J.

5